UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ISOMEDIA, INC., et al., Plaintiffs, v. SPECTRUM DIRECT, Inc., et al., Defendants. | CASE NO. C08-1733JLR ORDER |

## I. INTRODUCTION

The matter comes before the court on Plaintiffs Isomedia, Inc. and Isomedia.com, LLC's (collectively "Isomedia") motion for a preliminary injunction (Dkt. #50) against Defendant VistaPrint USA, Inc. ("VistaPrint"). Isomedia seeks a preliminary injunction requiring VistaPrint to "immediately cease and desist from sending any further unsolicited commercial emails . . . to any email address using a domain hosted by

Isomedia." (Mot. (Dkt. #50) at 2.) Having considered the parties' briefs, accompanying declarations, and all other evidence of record, the court DENIES Isomedia's motion.[1]

## II. BACKGROUND AND FINDINGS OF FACT

Isomedia is an Internet Service Provider ("ISP"), Internet Access Service ("IAS"), and hosting company based in Seattle, Washington. On December 2, 2008, Isomedia filed its initial complaint against nine defendants, including VistaPrint, alleging violations of the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM"), 15 U.S.C. § 7701, et. seq., the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.020, and Washington's Consumer Protection Act, RCW ch. 19.86. (*See* Compl. (Dkt. # 1).) On December 22, 2009, Isomedia filed its First Amended Complaint ("FAC"), adding three more defendants. (*See* FAC (Dkt. # 2).) On April 9, 2009, in response to a court order (Dkt. #35), Isomedia filed its Second Amended Complaint ("SAC"), alleging the same causes of action. (*See* SAC (Dkt. #49).) Also on April 9, 2009, Isomedia also filed its present motion for a preliminary injunction against VistaPrint. (*See* Mot. (Dkt. #50).) Isomedia has not sought preliminary injunctive relief against any other defendant. (*Id.* at 2)

Isomedia alleges that its computer servers are regularly inundated with "massive amounts of unwanted commercial email," which it refers to as "spam." (Declaration of Stephen Milton, dated April 9, 2009 ("Milton Decl.") (Dkt. #52) ¶ 4.) Isomedia also

[1] Although Defendant VistaPrint requested oral argument (Dkt. #82), Plaintiff Isomedia did not (Dkt. #50). The court finds oral argument in this matter is unnecessary.

asserts that "[a]ll Isomedia customers have given Isomedia the power to act on their behalf to take any and all steps necessary to stop commercial electronic mail." (*Id*. at ¶ 8.) Isomedia alleges that in 2008 it sent written notice by mail to VistaPrint requesting that VistaPrint stop sending unwanted commercial emails to its servers. (*See* Declaration of Robert J. Siegel, dated April 9, 2009 ("Siegel Decl. I") (Dkt. #51) ¶ 2, Ex. A.) (attaching unsigned August 6, 2008 letter to VistaPrint from counsel for Isomedia.) Isomedia states that it sent this letter to a physical address for VistaPrint that was provided in one of VistaPrint's emails. (*Id.* ¶¶ 2-3, Exs. A-C.)

Isomedia also contends that, as result of "spam" in general, it has incurred a variety of costs. (Milton Decl. ¶ 5.) For example, Isomedia has had to purchase seven additional servers at a cost of $2,000 each. (*Id.* ¶ 5a.) It has also had to purchase additional bandwidth at a cost of $230 per month. (*Id.* ¶ 5b.) Isomedia has had to pay two full-time employees on its technical staff to deal with spam and spam-related issues at an average rate of $6,000 per month. (*Id.* ¶ 5c.) Isomedia says it has lost over 300 customers to spam-related issues with average monthly revenue per customer of $88. (*Id.* ¶ 5d.) Isomedia asserts that these costs are significant, and adversely affect its profitability. (*Id.* ¶ 6.) Nevertheless, Isomedia does not quantify how much of the spam it receives or extra costs it incurs are directly attributable to VistaPrint. (*See generally* Milton Decl.)

## III. ANALYSIS AND CONCLUSIONS OF LAW

Isomedia bases its motion for a preliminary injunction on two separate statutes: (1) a provision of Washington State's CEMA, RCW § 19.190.090(2)(a), which authorizes injunctive relief for violations of RCW § 19.190.080, and (2) a provision of the federal CAN-SPAM, 15 U.S.C. § 7706(g)(1)(A), which provides for injunctive relief. (*See* Mot. at 4-5.) The provision of CEMA upon which Isomedia relies states:

> A person engaged in the business of providing internet access service to the public, an owner of a web page, or trademark owner who is adversely by reason of a violation of RCW 19.190.080, may bring an action against a person who violates RCW 19.190.080 to . . . [e]njoin further violations of RCW 19.190.080. . . .

RCW § 19.190.090(2)(a). Thus, injunctive relief under RCW § 19.190.090(2)(a) is predicated on a claim under RCW § 19.190.080. In the SAC, however, Isomedia specifies that its CEMA claim arises under RCW §§ 19.190.010 – 070. The SAC omits any reference to RCW § 19.190.080. (SAC (Dkt. # 49), ¶ 35 at 8.)

In its opposition to VistaPrint's original motion to dismiss, Isomedia represented to this court that it was not pleading a violation of RCW § 19.190.080. (Response (Dkt. 20) at 12.) ("Isomedia has not pled a violation of this section of the Washington CEMA, RCW § 19.190.080.") This court relied in part on the absence of a claim under RCW § 19.190.080 in its previous ruling denying various motions to dismiss, strike, or for a more definite statement of the SAC. (Order (Dkt. #116) at 9 n.1.) Isomedia cannot have

it both ways. Because Isomedia has not pled a claim under RCW § 19.190.080, it cannot seek injunctive relief under RCW § 19.190.090(2)(a).

There is another provision of CEMA, however, which the parties do not discuss, but which may nevertheless be applicable. RCW § 19.190.090(1) provides in pertinent part that "[a] person who is injured under this chapter may bring a civil action in the superior court to enjoin further violations . . . ." *Id.* The definition of a person includes a "corporation, . . . limited liability company, . . . or any other legal or commercial entity." RCW § 19.190.010(12). The court need not resolve the applicability of this provision, however, because Isomedia's motion fails on other grounds.

Irrespective of the applicability of CEMA, Isomedia may seek a preliminary injunction pursuant to CAN-SPAM, 15 U.S.C. § 7706(g)(1)(A). The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, ___ U.S. ___, 129 S.Ct. 365, 375-76 (2008). A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

*Winter*,129 S.Ct. at 374; *Am. Trucking Assoc., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).[2]

---

[2]In addition to the traditional test, the Ninth Circuit has also long used an "alternative" sliding-scale standard whereby a preliminary injunction may be granted "if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Freecycle Network, Inc. v. Oey,* 505 F.3d 898, 902 (9th Cir. 2007) (emphasis in original). Following the Supreme Court's decision in *Winter*, the Ninth Circuit suggested that this alternative standard may no longer be valid, stating, "to the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Am. Trucking Assoc.*, 559 F.3d at 1052 (footnote omitted). In referring to the "lesser standard," the Ninth Circuit cited *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007), which expressly articulated the sliding-scale approach stated above. *See Am. Trucking Assoc.*, 559 F.3d at 1052 n. 10. It remains unclear whether the *American Trucking* court intended to reject the alternate test in whole or whether it merely intended to underscore that *Winter* necessarily modified the previous formulation of the alternate test.

In a subsequent unpublished opinion, the Ninth Circuit suggested that the "alternative" standard does remain viable. *Greater Yellowstone Coalition v. Timchak*, No. 08-36018, 2009 WL 971474, at *1 (9th Cir. Apr. 10, 2009). After quoting *Winter's* four-part inquiry, the Ninth Circuit noted that "[i]n addition to this traditional test, this Court has consistently applied an alternative "sliding-scale" test . . . ." *Id.* The Ninth Circuit continued:

> . . . . [W]hile *Winter* held that it is not sufficient for a plaintiff to show a mere possibility of irreparable harm in order to prevail on his request for preliminary injunctive relief. . . *Winter* did not reject the sliding scale approach we employ in the alternative. . . . We find it unnecessary in this case to define the sliding-scale formulation's precise post-*Winter* contours.

*Id.* at *1 n.1; *see also Winter*, 129 S.Ct. at 392 (Ginsburg, J., dissenting) ("Consistent with equity's character, courts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high . . . . This Court has never rejected that formulation, and I do not believe it does so today."). The Ninth Circuit in *Greater Yellowstone* never refers to the its earlier published decision in *American Trucking*. *See Greater Yellowstone*, 2009 WL 971474, at *1.

Not surprisingly, district courts in this circuit have concluded both that the alternative test does not survive *Winter*, *see, e.g., Cervantes v. Countrywide Home Loans, Inc.*, No. CV 09-517-PHX-JAT, 2009 WL 1636169, at *1 n.1 (D. Ariz. June 10, 2009); *Salestraq Am., LLC v. Zyskowski*, No. 2:08-CV-01368-LHR-LRL, 2009 WL 1652170, at *2 n.2 (D. Nev. June 10,

**A. Likelihood of Success on the Merits.**

Pursuant to CAN-SPAM, Congress has made a public policy determination that recipients of commercial email have the "right to decline to receive additional commercial electronic email from the same source." 15 U.S.C. § 7701(b)(3). Isomedia alleges that it has provided notice to VistaPrint, on its own behalf as well as on behalf of Isomedia's subscribers, that neither Isomedia nor its subscribers wish to receive additional electronic emails from VistaPrint. (Siegel Decl. I at ¶ 2, Ex. A.) The notice allegedly took the form of a letter sent to a physical address provided in one of VistaPrint's emails. (*Id.*)

Based on 15 U.S.C. §§ 7704(a)(3) and 7704(a)(4), VistaPrint asserts that a letter (such as the one sent by Isomedia) is ineffective notice under CAN-SPAM. VistaPrint argues that the only notice under CAN-SPAM that can effectively require the sender of commercial email to cease sending unwanted emails is ". . . a reply electronic mail message or other form of Internet based communication . . ." *See* 15 U.S.C. §

---

2009), and that it does, *see, e.g.*, *San Luis & Delta-Mendota Water Auth. v. Salazar*, No. 1:09-CV-00407 OWW DLB, 2009 WL 1575169, at *9 n.5 (E.D. Cal. May 29, 2009) (". . . [D]istrict courts within the Ninth Circuit have suggested that the second prong of the alternative test which permits injunctive relief where plaintiff is able to show 'serious questions going to the merits,' survived *Winter*.") (citing *Save Strawberry Canyon v. Dept. of Energy*, ___ F. Supp. 2d ___, 2009 WL 723836, at *13 n.2 (N.D. Cal. 2009). At a minimum, following *Winter*, a plaintiff relying on either the traditional or "alternative" standard must demonstrate more than just a possibility of irreparable harm. *See Greater Yellowstone*, 2009 WL 971474, at *1. Nevertheless, as in *Greater Yellowstone*, the court need not decide the precise contours of the alternative test because the outcome today would be the same under either the traditional four-part *Winter* standard or under the Ninth Circuit's alternative sliding-scale formulation. *See infra* note 4.

7704(a)(3). VistaPrint further asserts that CAN-SPAM does not require it to honor Isomedia's request on behalf of Isomedia's customers to unsubscribe every email address at an entire domain. To the contrary, VistaPrint asserts that "it seems clear from the statutory language" that CAN-SPAM only "permit[s] individual recipients to unsubscribe from individual email addresses." (Resp. at 7.)

Isomedia counters that adopting VistaPrint's interpretation of CAN-SPAM would essentially eviscerate the Act. (*See* Reply (Dkt. #90).) This is because under VistaPrint's interpretation the only party that can effectively opt-out of receiving unwanted commercial email is an individual who has no standing to bring suit to enforce the request. Section 7706(g)(1) provides that CAN-SPAM's private right of action is limited to "provider[s] of Internet access services." *See* 15 U.S.C. § 7706(g)(1). Yet, under VistaPrint's statutory interpretation, these entities have no right to opt-out of receiving unwanted commercial emails on behalf of their customers. Isomedia asserts that this "classic catch-22," whereby those with authority to opt-out cannot sue, while those with standing to sue cannot "opt-out," cannot be what Congress intended to accomplish when it enacted CAN-SPAM. (*See* Reply at 4.)

Neither party cites any case law in support of their dueling interpretations of CAN-SPAM. In fact, Isomedia expressly recognizes that case law interpreting the Act "is relatively undeveloped" and that "the statutory framework . . . is somewhat unusual." (Mot. at 8.) Isomedia acknowledges that CAN-SPAM "is somewhat ambiguous as to what constitutes a valid 'unsubscribe' or 'opt-out' request." (*Id.* at 9.) Further,

Isomedia admits that "[w]hile it is clear that Congress requires spammers to include both a physical address and an electronic mechanism to unsubscribe, it is unclear if Congress intended that spammers would be bound to honor requests to unsubscribe sent to the required physical address." (*Id.*)

When a party seeks preliminary injunction, the court must deny such relief "unless that facts and law clearly favor the moving party." *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quotation and citation omitted). In deciding whether to issue a preliminary injunction, "the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (internal quotations omitted). This case presents both difficult questions of law and disputed questions of fact. The court notes that there are eleven other parties in this action, and that any resolution of these issues is likely to have a significant effect upon all of them. The court declines to decide the issues of statutory interpretation and application at this stage in the litigation, without the opportunity for comprehensive briefing, argument, and any relevant factual development from all of the affected parties. Therefore, the court concludes that Isomedia, based on its own admissions regarding the "ambiguous" and "unclear" application of CAN-SPAM to the facts of its claims, has not demonstrated a likelihood of success on the merits.[3]

---

[3] Vistaprint objects to some of the evidence presented by Isomedia. *See* Resp. (Dkt. # 82) at 15-16.) VistaPrint objects based on Fed. R. Evid. 901, 1002, and 1003 to the August 6,

**B. Likelihood of Irreparable Harm.**

Isomedia offers scant evidence that it will suffer irreparable harm absent injunctive relief. Isomedia provides some evidence of the costs it incurs "[a]s a result of the receipt of spam in general," but never isolates the costs related to unwanted commercial email received from VistaPrint in particular, as opposed to other defendants in this lawsuit, or even other "spammers" in general. *(See* Milton Decl. at ¶ 5.) Indeed, although Isomedia states that it has lost customers as a result of "spam," there is no way to discern how many, if any, of these customers were lost as a result of unwanted commercial email from VistaPrint. Accordingly, any harm directly attributable to unwanted commercial emails from VistaPrint is speculative. Speculative injuries are by definition not irreparable. *Goldie's Bookstore, Inc. v. Superior Court,* 739 F.2d 466, 472 (9th Cir. 1984) (noting any loss of "untold" customers and goodwill is too speculative to be considered irreparable).

---

2009 letter which Isomedia relies upon as evidence that it provided notice to VistaPrint to cease and desist sending commercial email to various domains hosted by Isomedia. (Response at 15.) Vistaprint notes that the letter is both unsigned and lacks the attachment noted in the body of the letter. Isomedia responds that the August 6, 2009 letter was prepared in its counsel's office as a ".pdf" file, was sent with an electronic signature, that its counsel's records indicate that it is a true and correct copy of letter, and that it was mailed to VistaPrint as described. (Declaration of Robert J. Siegel, dated May 1, 2009 ("Siegel Decl. II") (Dkt. #89) ¶ 4.) VistaPrint also argues that the emails submitted by Isomedia do not support Isomedia's assertion that VistaPrint invited recipients to unsubscribe by sending VistaPrint a letter. (*See* Resp. at 15-16.) Finally, VistaPrint objects to the evidence Isomedia submits to establish that its customers have granted Isomedia the authority to act on their behalf to stop unwanted commercial emails. (*Id.* at 16.) The court need not resolve these factual disputes in the context of this motion because even assuming the letter, the emails, and the evidence of consent are all valid and supported by admissible evidence, Isomedia would still not be able to establish a likelihood of success on the merits for purposes of a preliminary injunction here.

Further, although Isomedia asserts that the costs it has incurred "are very significant to a small company like ours" (*see* Milton Decl. at ¶ 6), harm that is merely monetary in nature will not ordinarily support injunctive relief. *Am. Trucking Assoc.*, 559 F.3d at 1057 (citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202) (9th Cir. 1980)). As the Supreme Court has admonished:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy expended . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Samson v. Murray*, 415 U.S. 61, 90 (1974). The court is not persuaded that the potential harms Isomedia articulates cannot be adequately remedied through a monetary award of damages should Isomedia ultimately prevail in this litigation.

Finally, Isomedia's delay in seeking injunctive relief belies its claim of irreparable harm. Isomedia has alleged that it sent its "opt-out" letter to VistaPrint on August 6, 2008. It did not file the present lawsuit until nearly four months later on December 2, 2008 (Dkt. #1), and did not file its motion seeking a preliminary injunction until April 9, 2009 – after another four months had passed (Dkt. #50). Isomedia's delay in seeking injunctive relief undercuts its assertion of irreparable harm. *See, e.g. Valeo Intellectual Prop., Inc. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005) ("A three-month delay in seeking injunctive relief is inconsistent with [plaintiff's] insistence that it faces irreparable harm.") (citing *Oakland Tribune, Inc. v. Chronicle Pub. Co. Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985)). The court finds that Isomedia has

failed to sufficiently demonstrate that it has or will suffer irreparable harm absent a preliminary injunction.

Having found that Isomedia has failed to establish either a likelihood of success on the merits or a likelihood of irreparable harm, the court declines to consider the remaining two elements of the test. *See, e.g. Phila. Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*, 553 F. Supp. 2d 433, 436 (E.D. Pa. 2008); *see also Germon v. Times Mirror Co.*, 520 F.2d 786, 788 (9th Cir. 1975) (ruling that because movant failed to sustain burden of showing likelihood of success on the merits, court need not consider issue of irreparable injury); *Harry Brown's*, 563 F.3d at 320 (". . . [F]ailure to demonstrate irreparable injury is a sufficient ground to deny a preliminary injunction. . . ."); *Bill Barrett Corp. v. U.S. Dept. of Interior*, 601 F. Supp. 2d 331, 335 (D.D.C. 2009) (". . . [A] movant's failure to establish irreparable harm is grounds for denying a motion for preliminary injunction without considering the other factors."). Although the factors are not applied mechanically, Isomedia must establish the existence of both of the first two factors for a preliminary injunction. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009). Here, because Isomedia has failed to clearly establish either of these factors, the court denies Isomedia's motion for preliminary injunction against VistaPrint.[4]

---

[4] Even under the Ninth Circuit's "alternative" sliding-scale test, the outcome would be the same under that standard. *See supra* note 2. Following the Supreme Court's ruling in *Winter*, a plaintiff relying on the "alternative" standard must at a minimum demonstrate more than a mere possibility of irreparable harm. *See Greater Yellowstone*, 2009 WL 971474, at *1.

## IV. CONCLUSION

The above order constitutes the court's finding of facts and conclusions of law.[5] For the reasons stated, the court DENIES Isomedia's motion (Dkt. #50) for a preliminary injunction.[6]

DATED this 1st day of July, 2009.



JAMES L. ROBART
United States District Judge

---

Because Isomedia has failed to establish either that it will suffer irreparable harm, or likelihood of success on the merits, its motion for preliminary injunction would fail the sliding-scale test. *See Cairns v. Franklin Mint Co.,* 24 F. Supp. 2d 1013, 1038 (C.D. Cal. 1998) (holding that under either formulation of the test, a party seeking a preliminary injunction must show "as an irreducible minimum, that there is a fair chance of success on the merits," as well as "some significant risk of irreparable injury") (quoting *Stanley,* 13 F.3d at 1319, and *Assoc. Gen. Contractors v. Coalition for Econ. Equity,* 950 F.2d 1404, 1410 (9th Cir. 1991)).

[5] It is within the court's discretion to deny a motion for preliminary injunction without an evidentiary hearing. *Anderson v. Jackson,* 556 F.3d 351, 361 (5th Cir. 2009) ("The district court did not abuse its discretion in denying the preliminary injunction without holding an evidentiary hearing."); *Nat'l Propane Gas Assoc. v. U.S. Dep't of Homeland Sec*., 534 F. Supp. 2d 16, 19 (D.D.C. 2008) (stating motion for preliminary injunction may be denied without hearing when record is sufficient to demonstrate lack of right to relief); *Rottman v. Penn. Interscholastic Athletic Assoc., Inc.*, 349 F. Supp. 2d 922, 928 (W.D. Pa. 2004) (holding district court is not obligated to hold a hearing when there are no relevant facts in dispute). A hearing in this matter was unnecessary because Isomedia's lack of a right to a preliminary injunction was evident in its own moving papers.

[6] The court also denies VistaPrint's request for attorney's fees and costs related to its defense of Isomedia's motion. (*See* Response at 16-17.) Although the court found scant support for Isomedia's motion, the court is not persuaded that it was brought in bad faith. The court also denies VistaPrint's motion to strike various portions of Isomedia's reply (Dkt. #88) as moot. (*See* Sur-Reply (Dkt. #95).)